IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AGNES CORDOVA,

    Plaintiff,

v.                                                      Civil No. 97-1329 SC/WWD

KENNETH S. APFEL, Commissioner,
Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1.    This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision, filed June 11, 1998[9-1]. The Commissioner denied plaintiff's request for Supplemental Security Income benefits. Plaintiff, 48 years old, alleges a disability which commenced March 1994 due to: back and leg pain, headaches, diabetes, ulcer, kidney infection, blurred vision, obesity and a mental condition. Ms. Cordova has past work experience as a utility worker, a bingo parlor money clerk, an accounting clerk, and a clerk for a school system. She has completed high school and one year of college, a nurse's aid course and has also had computer training.

    2.    The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Ms. Cordova's impairments do not preclude her from performing her past relevant work as a clerk. The Appeals Council denied Ms. Cordova's request for review of the ALJ's decision, thus the ALJ's decision is the final

decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises one allegation of error with respect to the ALJ's decision: (1) that the ALJ erred in not considering the physical and mental demands of Ms. Cordova's past relevant work in his determination that her impairment does not prevent her from performing past relevant work. As part of this error, Plaintiff alleges that the ALJ failed to consider her mental impairment in the analysis.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  <u>Reyes v. Bowen</u>, 845 F.2d 242, 243 (10th Cir. 1988).  In this case, the Commissioner ended the inquiry at step four, concluding that Plaintiff was not precluded from performing some of her past relevant work.  <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988) (if determination can be made at any step, evaluation under subsequent steps is not necessary).

    7.  Ms. Cordova is unmarried, lives with a male friend and has three grown children.  <u>Tr. at 515-16</u>.  In April 1998, she injured her lower back attempting to lift a 55 gallon drum of paint waste while working for the City of San Diego. The injury was treated conservatively with anti-inflammatory medication and bedrest.  <u>Tr. at 518</u>.[1]  She continues to get refills for the medication, but has had no further treatment or therapy for her back pain since 1989.  <u>Tr. at 520</u>.

    8.  After her back injury, Ms. Cordova returned to work after receiving vocational retraining to use computers.  At the hearing, she told the ALJ that she quit the computer job because she got sick because of her diabetes and her ulcer, and also because she found it "very hard to work with that lady."  <u>Tr. at 524</u>.

    9.  Plaintiff last worked in March 1994 doing clerical work as a Title V Indian education clerk.  In between, she performed maintenance-type work, where her duties included emptying trash, cleaning bathrooms, pruning, weeding, planting and driving hauling trucks.  In 1985 and 1986 she also worked as a bingo money clerk in San Diego, and as a clerk for the public schools

---

[1] Plaintiff received workers' compensation for about a year, and received a settlement of $18,000.00 from the city.  <u>Tr. at 519</u>

and the city.

10.   Ms. Cordova told the ALJ that she could no longer work because of the pain from her diabetes and because she "can't stand to be in a room with a lot of people." Tr. at 530-31. She also stated that she has migraine headaches which last 2 to 3 days, that every morning she either vomits or her "head hurts and [she] can't see." Tr. at 532. Plaintiff testified that her back still hurts where the pain starts to involve the lower extremities and causes difficulty walking. Id. She said that she is bothered by blurred vision, although she did not wear her glasses to the hearing. Id.

11.   Plaintiff stated that she can lift ten pounds, walk about one block, stand for ten to fifteen minutes and sit for thirty minutes. Tr. at 534. After waking, she spends the morning sitting and talking, then goes to her room to "hide myself from the world." Afterwards, she spends most of the day with her legs up watching television with her male companion. Tr. at 535-37. Plaintiff stated that she does no laundry and no cooking.[2] Her male companion performs most of the household chores and driving, even though Plaintiff has a driver's license. Id.

12.   In November 1991, Plaintiff underwent a carpal tunnel release on her right hand,[3] after which records indicate that she obtained "significant relief of night pain," although she still had residual numbness and mild pain. Tr. at 263. At the hearing, Ms. Cordova wore wrist braces and told the ALJ that her doctor was considering surgery again because her carpal tunnel

---

[2] Plaintiff stated to Michael Dempsey, M.D., who performed a psychiatric consultation in December 1994, that she shared "cooking chores" with her daughter, with whom she lived at the time. Tr. at 447.

[3] Some documents in the records differ regarding which hand was treated. See Tr. at 259, 260, 263, 266.

4

symptoms had worsened. Tr. at 530, 535, 540. She complained of "neuropathy" in her right hand and that her hand goes "spastic," describing the sensation as her hands "wanting to deform." Tr. at 535.

13. Plaintiff contends that the ALJ erred in not considering the physical and mental demands of Ms. Cordova's past relevant work in his determination that her impairment does not prevent her from performing past relevant work. As part of this error, Plaintiff alleges that the ALJ failed to consider her mental impairment in the analysis.

14. At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do her past relevant work. Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); See 20 C.F.R. § 1520(e). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity; in the second, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 82-62.

**Alleged Failure to Consider Mental Impairment**

15. As part of her contention, Plaintiff alleges that the ALJ failed to consider her mental impairment. Plaintiff described her symptoms to the ALJ as follows:

> I can't stay in, in a place with a lot of people, I get very uncomfortable I feel that everybody's talking about me, I'm depressed a lot of the time and I can't, I can't sleep at night, I just have these anxiety attacks and I guess I'm paranoid too." Tr. at 527.

16. Plaintiff told the ALJ she made "several" suicidal attempts. Tr. at 539. The record indicates that there was only one attempt which occurred sometime around 1988, when Ms. Cordova attempted suicide by cutting both wrists, as a reaction to finding out that the man she had a child with and planned to marry was already married Tr. at 445, 501, 526.[4] While in San Diego, around 1993, she was treated by psychiatrist Dr. Kirschner, who had prescribed medications for her depression and anxiety. Tr. at 499, 523, 529. Ms. Cordova is taking medications which include thioridazine (Mellaril, a phenothiazine used to treat manifestations of psychotic disorders as well as moderate to marked depression and anxiety), Trazadone (an antidepressant), insulin and ibuprofen. Tr. at 445, 449.

17. On recommendation by Dr. Schneider, her present physician, Plaintiff visited the UNM Mental Health Center in order to continue getting these prescriptions. Tr. at 529. She told the ALJ that she visited the Center once, stayed for a little while, and then left because "something told me you don't belong here." Tr. 537-38.

18. Plaintiff's main argument concerning the mental impairment is that the psychological report of Judy deVoss, Ph.D, from 1989 supports the existence of a severe mental impairment and that the ALJ failed to consider both the report and the impairment. On the contrary, I find that the ALJ considered this report and also gave his reasons for giving more weight to the psychiatric report done by Michael Dempsey, M.D. in 1994.

19. Dr. deVoss reported that Plaintiff's anxiety and depression resulted from the loss of

---

[4] Although the ALJ did not mark the presence of any suicidal ideation in the Psychiatric Review Technique Form, Tr. at 19, it is not clear whether Plaintiff still has such thoughts. In 1989, she told clinical psychologist Judy deVoss that she would never try to kill herself again, "nothing is worth that." Tr. at 502. The December 1994 report of psychiatrist Michael Dempsey, M.D. states that Ms. Cordova has suicidal thoughts but "has no current plans." Tr. at 446.

6

her identity as a worker and that she was unable to "adapt to the reality of her injury by finding less physically demanding work." Tr. at 505-06. The psychologist recommended further treatment in the form of weekly psychotherapy until the end of her vocational rehabilitation training (computer retraining) to stabilize Ms. Cordova's emotional condition and keep it from getting worse. Id. Dr. deVoss stated in her report that Plaintiff's "prognosis is favorable." Tr. at 507.

20. The ALJ must weigh all the evidence in arriving at a determination about disability. 20 C.F.R. § 404.1527(c). He also has the ability to resolve conflicts in the medical evidence. Richardson v. Perales, 402 U.S. 389, 399 (1971); Casias v. Sec'y of Health & Hum. Serv., 933 F.2d 799, 801 (10th Cir. 1991). Noting an absence of hospitalization or other treatment compatible with a serious psychiatric disorder such as schizophrenia or severe bipolar disorder, Dr. Dempsey had difficulty making a "firm diagnosis." Tr. at 448-49. He found that Plaintiff's history was atypical of the self-reported symptoms and that the psychotic disorders which would go with these symptoms were "extremely unlikely" to make a first appearance at mid-life. Id.

21. Dr. Dempsey opined that examination of the Plaintiff disclosed either mild or no limitations in the functional areas of daily living; socialization; and concentration, persistence and pace. Id. He acknowledged that if Plaintiff did in fact have a serious thought disorder, "then her concentration, persistence and pace probably is significantly impaired." Tr. at 448. However, he added that if she did not have such a disorder, or in the absence of a confirmation of such a disorder by "previous history medical documentation," then her persistence, pace and concentration "are presumed to be essentially unimpaired." Id.

22. The fact that parts of Dr. deVoss' opinion are at odds with Dr. Dempsey's report is

not at all fatal to the ALJ's conclusion as long as the substantiality of evidence is based upon the record taken as a whole.  See Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983).  I find that it is.  The ALJ has the ability to resolve conflicts in the medical evidence, and he may reject a physician's opinion if he gives specific, legitimate reasons for doing so.  Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir.1988).  Here, the ALJ examined both reports against the background of other medical evidence in the record, Tr. at 13-14, and concluded by giving more weight to Dr. Dempsey's report.

23.   The relevancy of DeVoss's report to Plaintiff's allegations of disability weakened as the ALJ considered, in part, the following factors: the fact that Ms. Cordova's alleged disability onset date was almost 6 years after Dr. deVoss' report was made, where Dr. Dempsey's report was completed only 9 months after the onset date; the fact that subsequent to Dr. deVoss' report, Plaintiff received computer training and then engaged in substantial gainful activity from October 1992 to March 1994.  Tr. at 13, 520.

24.   Plaintiff points out that at the hearing, the ALJ had requested records from Dr. Kirschner in San Diego in an effort to obtain additional documents regarding Ms. Cordova's mental impairment.  Tr. at 508.  The fact that these records were never received by the ALJ, Tr. at 508, does not affect the ALJ's findings.  The Plaintiff still has the burden at step four of proving her inability to perform past relevant work.  See Muskgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992); Andrade v. Secretary of Health & Hum. Servs., 985 F.2d 1045, 1050-51 (10th Cir. 1993).

25.   Also, sufficient evidence still exists from the record to support the ALJ's decision, based not only on Dr. Dempsey's report, but also on the sparseness of other evidence

corroborating the existence or treatment of a serious mental condition precluding work. Thus, that part of Plaintiff's allegation concerning the ALJ's alleged failure to consider her mental impairment is without merit.

**Alleged Failure of ALJ to Make Own Findings at Step Four**

26. Plaintiff then contends that the ALJ relied on the vocational expert ("VE") instead of making his own findings at step four concerning the physical and mental demands of claimant's past relevant work. While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). Because the scope of jobs under inquiry at step four is much narrower (limited to claimant's past work) than at step five (where the VE gives an opinion about claimant's ability to work in the national economy), the actual findings in step four must be the ALJ's own evaluation of Plaintiff's ability to meet the physical and mental demand of past work. Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996).

27. Plaintiff argues here that the ALJ erred by relying on the VE's opinion, but then goes on to fault the ALJ for *not* relying on the hypothetical which added de Voss's report into the equation.[5] Aside from the fact that Plaintiff cannot have it both ways, I find that the ALJ considered the VE's testimony but did not rely on it. The ALJ made his own findings, as required

---

[5] I agree with Defendant that Plaintiff confuses a hypothetical with a finding. While the VE testified that the symptoms shown on the deVoss report would preclude past relevant work, Tr. at 548-49, the ALJ was not obliged to rely on the information elicited from the hypothetical which included the deVoss report. See Talley v. Sullivan, 908 F.2d 585 (10th Cir. 1990) (testimony of VE that plaintiff could not perform the jobs for which she had transferable skills was not binding on the ALJ because the hypothetical posed to the VE did not set forth only impairments which had been accepted as true by the ALJ).

under step four, by examining the objective medical evidence, including, but not limited to, the Seagate Medical Group assessment of Ms. Cordova's residual functional capacity [6] as well as the more recent medical reports from UNM Medical Center. See, e.g., Tr. at 286, 463, 468.

28. Although the ALJ realized that the Seagate assessment of limitations supported a finding that Plaintiff could perform medium level work, he based his findings instead on an ability to do light work, which was clearly within Plaintiff's capability. Tr. at 15-16. The ALJ's conclusion that Plaintiff's alleged limitations were not supported by the record was based on substantial evidence, viewing the entire record.

29. Based on the ALJ's examination of the medical, psychological and psychiatric reports, and of Plaintiff's testimony regarding her symptoms, the ALJ adequately satisfied the requirements under the first phase of step four. By questioning the Plaintiff at the hearing about her duties in her past jobs, including the clerical jobs which he eventually found that Plaintiff could perform, the ALJ met the requirements under the second phase. Tr. at 519-22. Finally, the ALJ's decision itself is a well-reasoned opinion on Plaintiff's ability to perform her past relevant work as defined by the VE to be in the category of light work, in light of the medical documentation and reports available from the record. Tr. at 543-44. Thus, the ALJ did not incorrectly rely on the VE testimony but performed a legal correct inquiry under step four in considering the physical and mental demands of claimant's past relevant work.

30. In sum, the ALJ did not fail to consider Ms. Cordova's mental impairment in

---

[6] The Seagate Medical Group assessment performed by Kristof Siciarz, M.D., showed that Ms. Cordova has the residual functional capacity for medium work: occasionally lift and/or carry a total of 50 pounds; frequently lift and/or carry a total of 25 pounds; ability to stand and walk (with normal breaks) for about 6 hours; ability to sit (with normal breaks) for about 6 hours; unlimited ability to push and/or pull. Tr. at 286.

determining that Plaintiff could perform past relevant work as a clerk; and the ALJ did not incorrectly rely on the VE testimony but rather performed a legal correct inquiry under step four in considering the physical and mental demands of claimant's past relevant work.

## Recommendation

I recommend that Plaintiff's Motion to Reverse or Remand Administrative Decision [9-1] be denied and this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE